```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :    05 CIV. 7965 (DLC)
AHMAD HBOUSS and AAAH HOLDINGS INC.,     :
                                         :    OPINION & ORDER
                  Plaintiffs,            :
                                         :
         -v-                             :
                                         :
COCA-COLA ENTERPRISES INC. and JOHN      :
DOES 1-20,                               :
                                         :
                  Defendants.            :
                                         :
---------------------------------------- X
```

Appearances:

For Plaintiffs:

Richard Turyn
Vano Haroutunian
Ballon Stoll Bader & Nadler PC
1450 Broadway, 14th Floor
New York, NY 10018

For Defendants:
Michael E. Johnson
Alston & Bird LLP
90 Park Avenue
New York, NY 10016

James C. Grant
Christina Hull Eikhoff
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309

DENISE COTE, District Judge:

Defendants move to dismiss the plaintiffs' complaint for failure to state a claim. That motion is granted.

## Background

A. Factual Background

The following factual background is taken from facts as

alleged in the complaint. Plaintiff Ahmad Hbouss is a citizen of Lebanon and the sole shareholder of plaintiff AAAH Holdings, Inc. ("AAAH"). AAAH is, in turn, a shareholder of non-party Naya, Inc., a bottler, marketer, and distributor of bottled water in the United States and Canada. Both AAAH and Naya are corporations under the laws of Quebec, Canada. Defendant Coca-Cola Enterprises, Inc. ("Coca-Cola") is a packager, marketer, and distributor of products of the Coca-Cola Company.

Until mid-1998, Coca-Cola and some of its subsidiaries were distributors of Naya water. At some date not specified in the complaint, Coca-Cola cancelled its distribution agreements with Naya. Some time thereafter, on October 21, 1999, Hbouss and Naya and Coca-Cola entered into a Settlement Agreement in which Hbouss and Naya released Coca-Cola, and Coca-Cola released Hbouss and Naya, from all claims between them up to that date.

Around the same time, Coca-Cola sought to improve its position in the North American bottled water market by acquiring existing distributors that offered water at different price points in the market. One possible acquisition was Danone, a European company whose major product was Evian, a brand of premium priced bottled water. Danone did not have a product at Naya's non-premium price point.

In order to enhance Danone's position in the American bottled water market, which would benefit Coca-Cola upon its acquisition of Danone's North American market share, Coca-Cola undertook several actions harmful to Naya. First, Coca-Cola

2

covertly influenced Naya's financing banks to force Naya into bankruptcy. It then covertly influenced Naya's bankruptcy trustee to sell Naya's assets for less than their true value. And finally it prevailed upon Danone to acquire Naya's assets from the bankruptcy trustee in June of 2000. When all of this had been accomplished, Coca-Cola entered into various agreements with Danone that ultimately led in June of 2005 to the acquisition by Coca-Cola of all of Danone's North American operations, including the former assets of Naya.

B. Procedural History

Plaintiffs' complaint was originally filed in New York Supreme Court for the county of New York and was removed to this Court by Coca-Cola pursuant to 28 U.S.C. § 1441(a). Immediately following removal, Coca-Cola filed a motion to dismiss. At a conference held on November 18, 2005, plaintiffs requested leave to amend their complaint in order to join Naya as a co-plaintiff to this action. That application was granted on the explicit understanding that plaintiffs would be given no further opportunity to amend. The amended complaint was to be filed by January 13, 2006.

In a letter dated January 6, 2006, plaintiffs informed the Court that Canadian counsel had undertaken the required process before the court in Quebec to join Naya to this action. Plaintiffs estimated that an amended complaint could be filed by April 15. The date for filing an amended complaint was adjourned

sine die pending resolution of the petition before the Quebec court.

On January 10, however, plaintiffs informed the Court that Naya's bankruptcy trustee opposed the petition to allow Naya to join this action. As a result, plaintiffs would be unable to file an amended complaint by April 15, 2006.

Coca-Cola again moved to dismiss the unamended complaint. And once again, plaintiffs requested an opportunity to amend. In an Order dated March 23, the Court denied the motion to dismiss and gave the plaintiffs until April 14, 2006 to file an amended complaint.

Plaintiffs filed an amended complaint on April 17, 2006. Naya did not join plaintiffs as a party to this action. Coca-Cola filed this motion to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6).

## Discussion

Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff is required only to give fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 590 (2d Cir. 2006). "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"

set forth therein. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (citation omitted); see also Twombly v. Bell Atl. Corp., 425 F.3d 99, 106 (2d Cir. 2005) (explaining that dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (citation omitted)).

When considering a motion to dismiss, a trial court "must accept as true all the factual allegations in the complaint and draw all reasonable inferences in [the] plaintiff['s] favor." In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 384 (2d Cir. 2005) (citation omitted). The court's duty "is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005) (citation omitted).

The complaint seeks relief on four claims. The first two stem from an alleged breach of the implied covenant of good faith and fair dealing contained in the 1999 Settlement Agreement. The first claim seeks damages for Hbouss as a party to that agreement; the second seeks damages for Hbouss as a creditor of Naya. The third claim seeks relief for AAAH, whose shares in Naya lost value when Coca-Cola forced Naya into bankruptcy. And the fourth claim is a derivative cause of action brought by AAAH in the place of Naya to recover for harm done to Naya by Coca-Cola's destruction of its business.

A. Implied Covenant of Good Faith and Fair Dealing

When jurisdiction is based on diversity of citizenship, a federal court applies the substantive law of the forum state. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). The parties do not dispute that New York law governs the causes of action sounding in contract.

Under New York law, there is a covenant of good faith and fair dealing implied in all contracts. 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," id., and may thus be breached by conduct not expressly forbidden by any contractual provision. P.T. & L. Contracting Corp. v. Trataros Const., Inc., 816 N.Y.S.2d 508, 508 (2d Dep't 2006). But when a complaint does not adequately allege that the defendant injured plaintiff's right to receive the benefits of their agreement, the claim will be dismissed. EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11, 22 (2005).

Plaintiffs' complaint does not make any allegations regarding Coca-Cola's performance under the 1999 agreement. Rather, plaintiffs argue that Coca-Cola "went directly from its negotiation of the 1999 Agreement in which it received a [r]elease from [plaintiffs'] claims for any prior wrongdoing, into a new campaign to drive Naya out of business." Thus, the thrust of their argument with respect to the first and second

6

claims is simply that Coca-Cola engaged in later, unrelated conduct with third parties that had adverse consequences for plaintiffs. The covenant on which plaintiffs base their claim, however, only extends to "the course of contract performance." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995). It "does not encompass future dealings or negotiations between the parties." Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 494 (S.D.N.Y. 2004) (citation omitted). Because plaintiffs have not alleged that they were denied the benefits of the 1999 Settlement Agreement, they fail to state a claim for breach of the implied covenant of good faith and fair dealing contained in that agreement.

B. Harm to Shareholder

Plaintiffs' third claim alleges that Coca-Cola's actions "deprived AAAH of the fair value of its share holdings in Naya." New York law reflects the general rule that a shareholder may not sue in her own right "where an injury is suffered by a corporation and the shareholders suffer solely through depreciation in the value of their stock." Vincel v. White Motor Corp., 521 F.2d 1113, 1118 (2d Cir. 1975); see also Niles v. New York Cent. & H.R.R. Co., 176 N.Y. 119, 123-124 (1903).[1] There

---

[1] The parties have consented to the application of New York law to this claim. That consent is sufficient to end the choice of law inquiry. See 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999).

7

are exceptions to this rule, as plaintiffs note, when a shareholder "has been damaged individually as a result of [defendant's] breach of contractual and fiduciary duties." Weiss v. Salamone, 498 N.Y.S.2d 630, 631 (2d Dep't 1986); see also Ceribelli v. Elghanayan, 990 F.2d 62, 63 (2d Cir. 1993) ("Under New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder.").

Yet plaintiffs have not alleged any facts that, if proven, would establish the breach of a contractual or fiduciary duty by Coca-Cola. Even drawing all reasonable inferences in their favor, "plaintiffs suffered damage only derivatively by reason of the diminution in the value of their . . . stock." Vincel, 521 F.2d at 1118. Having failed to establish the existence of a separate and distinct wrong to itself, AAAH lacks standing under New York law "to sue for an injury to the corporation even though it results in depreciation in the value of [its] shares of the corporation's stock." Citibank, N.A. v. Plapinger, 66 N.Y.2d 90, 93 at n.* (1985). The third claim for relief must therefore be dismissed.

C. The Derivative Claim

Plaintiffs' fourth claim is a derivative claim asserted on behalf of Naya. New York courts "look to the law of the state of incorporation in adjudicating a corporation's 'internal affairs,' including questions as to the relationship between the corporation's shareholders and its directors." Galef v.

8

Alexander, 615 F.2d 51, 58 (2d Cir. 1980); see also Graczykowski v. Ramppen, 477 N.Y.S.2d 454, 456 (3d Dep't 1984) (noting that the "generally accepted choice-of-law rule with respect to such 'internal affairs' . . . is to apply the law of the place of incorporation" (citation omitted)).[2] Under this rule, plaintiffs' ability to bring a derivative claim on behalf of Naya is determined by reference to the laws of Quebec. See Miller v. Schreyer, 606 N.Y.S.2d 642, 644 (1st Dep't 1994) ("The law of the state of incorporation governs the pre-litigation demand requirement in a shareholder derivative action."). The parties do not dispute that Quebecois law applies.

When confronted with a question of foreign law, a court "may consider "any relevant material or source," including submissions by the parties "whether or not . . . admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1; see also Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 28 n.2 (2d Cir. 1998) (noting that affidavits submitted by the parties may be considered). The primary point of dispute between the parties is what procedure a shareholder in a corporation must follow to initiate a derivative action after the corporation has filed for bankruptcy in a Canadian court. Defendants argue that, under Canadian law, all claims on behalf of a bankrupt corporation

---

[2] Norlin Corporation v. Rooney, Pace Inc., 744 F.2d 255 (2d Cir. 1984), does not compel a contrary conclusion. Finding that any conflict between the laws of the state of incorporation and New York, where the corporation had its principal place of business, was "purely illusory," id. at 264, the Court of Appeals found it appropriate to apply the forum state's shareholder demand rules.

9

belong exclusively to the bankruptcy estate and can only be asserted by the trustee. See Canada Bankruptcy & Insolvency Act ("BIA"), R.S.C. ch B-3, § 2 (defining property to include "any type of property"), § 43(9) (describing bankruptcy trustee as "trustee of the property"). They cite Section 38 of the BIA for the proposition that a third party, including a shareholder, cannot institute an action on behalf of the debtor without express legal authority. See id. § 38. Plaintiffs argue in their opposition to this motion that "a derivative suit is not subject to the provisions of Section 38 and the permission of the bankruptcy court is not needed in order to prosecute the derivative action."

Section 38 provides, as its title indicates, for a "[p]roceeding by creditor when trustee refuses to act." BIA § 38(1) (emphasis added). There is, as the Second Circuit noted long ago, a "vital difference between the shareholder and the creditor." Specifically, "[t]he shareholder is an adventurer in the corporate business; he takes the risk, and profits from success. The creditor, in compensation for not sharing the profits, is to be paid independently of the risk of success, and gets a right to dip into the capital when the payment date arrives." Comm'r v. O.P.P. Holding Corp., 76 F.2d 11, 12 (2d Cir. 1935). Thus, it would seem that, on its face, Section 38 is not applicable to actions brought by shareholders. At least one Canadian court has read the statute this way. See In re Bankruptcy of Grandview Ford Lincoln Sales Ltd., No. 35-078561-T,

10

103 A.C.W.S. (3d) 254 (Ont. Super. Ct. Jan. 15, 2001), available at 2001 A.C.W.S.J. Lexis 11963 (dismissing derivative suit brought under Section 38); see also In re Patricia Appliance Shops Ltd., [1922] 3 D.L.R. 1160, 1161 (Ont. Sup. Ct.) ("A shareholder is not a creditor who can prove a claim at all, in the sense in which the word 'claim' is used in the [Bankruptcy] Act.").

Plaintiffs' other submissions over the course of this litigation, however, suggest that they have not always subscribed to the view set forth in their opposition brief. They attach to their brief in opposition to this motion a copy of a motion filed in Quebec Superior Court on December 16, 2005 by plaintiffs' Canadian counsel. In the motion, plaintiffs "seek[] leave to institute . . . in accordance with the provisions of section 38 of the [BIA], an action against [Coca-Cola] and others claiming against them various damages caused to Naya." They aver in the motion that they "have the required interest and have met all the requirements of law in order to avail themselves of the provisions of s. 38 BIA." It is unclear why plaintiffs would have filed this motion if they believed, as they argue here, that a derivative suit is not subject to the provisions of Section 38.[3]

---

[3] It also merits mention that plaintiffs misrepresented proceedings in this Court to the Quebec Superior Court. As reflected in the November 18, 2005 Order, this Court granted plaintiffs' request for leave to amend their complaint, which appeared to be deficient. Nothing in that Order, and nothing that transpired in the pre-trial conference held that same day supports plaintiffs' argument to the Canadian court that their

11

Even if plaintiffs are correct, though, that Section 38 does not apply to derivative suits, they still have not pointed to any legal authority that would support their claim that they do not need permission from the bankruptcy court to pursue this claim on behalf of Naya. The cases submitted by plaintiffs for the Court's review in fact support the opposite conclusion.[4] In Gibson v. Man. Dev. Corp., [1982] 18 Man. R.2d. 362 (Man. Ct. App.), the Manitoba Court of Appeal held that shareholders could not bring a derivative suit under Manitoba corporate law when a bankruptcy has intervened. Id. at para. 14. At that time, the court noted, "the assets vest in the trustee in bankruptcy and he alone has the right to pursue a chose in action on behalf of the corporate entity." Id. at para. 24. The same court later held in Bank of Montreal v. Northguard Holdings Ltd., [1989] 58 Man. R.2d 241 (Man. Ct. App.), that a similar rule applied to corporations in receivership: "As a general rule, the court will not make an order permitting . . . a majority of the shareholders[] to commence an action which the receiver does not want to bring." Id. at para. 20. Such an action might be

---

petition "should not be refused inasmuch as it follows a directive" from this Court. Nor does the Order fairly support the inference that this action "is serious on its face." The Court expressed no view on the quality of the complaint, and indeed expressed the contrary view that it appeared to fail to state a claim.

[4] In addition to the three cases discussed in the text, plaintiffs also submitted a case from the Quebec Superior Court. This case is in French, and no translation of the opinion was provided. The Court is thus unable to consider the views of the Quebec Superior Court on this issue.

12

appropriate in some circumstances, but those circumstances would be determined by a court.  Id.  Finally, the opinion of the Alberta Court of Appeal in Transamerica Commercial Finance Corp of Canada v. Computercorp Systems Inc., [1993] 10 Alta. L.R.3d 337 (Alta. Ct. App.), is simply inapposite.  Transamerica was not, as the Alberta Court of Appeal noted, "a case where the shareholder attempts, during bankruptcy, a derivative action," and it certainly does not support plaintiffs' position that such a suit could be maintained without court approval.

The rule that seems to emerge from the Canadian authorities provided by the parties is that once a corporation goes into bankruptcy, all property of the corporation, including all causes of action it may have, fall under the control of a trustee.  No action may be brought on behalf of the corporation without either the trustee's approval or, if the trustee refuses, an order of the bankruptcy court.  This is the rule under American law.  See, e.g., Mitchell Excavators, Inc. v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984).[5]  And the plaintiffs have offered no reason to believe that Canadian bankruptcy law is any different in this respect.  See Clarkson Co., Ltd. v. Shaheen, 544 F.2d 624, 630 (2d Cir. 1976) (noting, in a collateral attack on a Canadian

---

[5] "Under 11 U.S.C. § 541, the rights of action of the debtor pass to the estate created by the commencement of the bankruptcy proceeding, not directly to the trustee.  Those rights, however, are still normally vindicated by the trustee. . . . It is true, of course, under certain circumstances a shareholder may assert a cause of action of the debtor even after the commencement of a bankruptcy proceeding. . . . But in these cases, some proceeding in the bankruptcy court must take place before a shareholder can assert the right directly."  Mitchell, 734 F.2d at 131.

13

bankruptcy proceeding, that "Canada [is] a sister common law jurisdiction with procedures akin to our own"). Moreover, until briefing on this motion plaintiffs proceeded on this same understanding of Canadian law, representing to this Court in their January 10 letter that it would not be possible to proceed with this action "until the issue of Naya Inc.'s ability to be represented in this action has been resolved by the court handling its insolvency case in Canada." Because plaintiffs fail to point to any legal authority to support their ability to proceed with their derivative claim without approval of the Quebec Superior Court, this claim will be dismissed pending a decision on their petition by that court.

## Conclusion

Plaintiffs have failed to state a claim for breach of the implied covenant of good faith and fair dealing and for damages suffered by AAAH as a shareholder in Naya. Accordingly, plaintiffs' first three claims are dismissed with prejudice. See Arrowsmith v. United Press Intern., 320 F.2d 219, 221 (2d Cir. 1963) ("[A] dismissal for failure to state a claim upon which relief can be granted is with prejudice."). The problem with plaintiffs' fourth claim is that plaintiffs have not received permission from a Canadian court to proceed with a derivative suit notwithstanding the trustee's refusal to participate. Because the possibility remains that plaintiffs' petition to the Quebec court will be granted and that plaintiffs might one day have authority to bring Naya's claim through a derivative suit,

the fourth claim is denied without prejudice. Cf. Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004) (recognizing that dismissal without prejudice is appropriate where a plaintiff has failed to, but still may, exhaust administrative remedies). The Clerk of Court shall close the case.

SO ORDERED:

Dated: New York, New York
August 9, 2006

_____
DENISE COTE
United States District Judge